**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Susann Guy, | : | Civil Action |
| | : | |
| Plaintiff | : | No. |
| | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| Canine Partners for Life and Janie Cramer, | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

### Introduction

1.     Plaintiff Susann Guy (Guy) is suing her former employer, Canine Partners for Life (CPL), and its former Executive Director, Janie Cramer (Cramer), for firing her due to age discrimination and retaliation.

2.     Guy brings this case under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.A. § 12101 *et seq.* (ADAAA), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (PHRA).

3.     Guy seeks back pay, reinstatement or front pay, loss of earnings capacity, compensatory damages (under the ADAAA and the PHRA), punitive damages (under the ADAAA), liquidated damages (under the ADEA), interest, negative tax consequence damages, injunctive relief, and attorney's fees and costs.

### Jurisdiction And Venue

4.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and the ADAAA and the ADEA. Furthermore, Defendants' conduct violates the PHRA and the pendant jurisdiction of this Court is invoked to remedy those violations.

5.    All jurisdictional prerequisites to bringing this action have been satisfied because:

(a)    On March 12, 2024, Guy dual-filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC).

(b)    On July 15, 2025, the EEOC issued a Determination and Notice of Rights to Guy.

6.    Venue is proper as Guy worked at CPL, which is located in the Eastern District of Pennsylvania.

## **The Parties**

7.    Guy resides in Quarryville, Pennsylvania and is currently 61 years old.

8.    CPL is a Pennsylvania domestic non-profit domestic corporation with a principal place of business located at 334 Faggs Manor Road, Cochranville, PA 19330.

9.    Upon information and belief, at all relevant times, CPL employed over 23-25 employees.

10.    According to its website, CPL "is a non-profit 501(c)(3) organization that breeds, raises, trains, and matches service and companion dogs with those who need support in their daily lives." *See* https://k94life.org/  (visited October 6, 2025).

11.    According to its website, CPL "is dedicated to improving the quality of life and increasing the independence of those with disabilities or who are in other situations of need by pairing them with professionally trained service dogs and companion dogs." *See* https://k94life.org/about-us-canine-partners-for-life/ (visited October 6, 2025).

12.    At all relevant times, Cramer was CPL's Executive Director.

13.     At all material times hereto, CPL acted through its employees, agents, representatives and/or servants who were acting within the course and scope of their employment and authority.

## **Factual Background**

### **Age Discrimination and Retaliation are Foreseeable**

14.     In 2023, the EEOC received 81,055 Charges of Discrimination.[1] *See* https://www.eeoc.gov/data/enforcement-and-litigation-statistics-0 (visited October 6, 2025).

15.     Of these 81,055 Charges of Discrimination, 14,144 (17.45%) alleged age discrimination. *See id.*

16.     Of these 81,055 Charges of Discrimination, 46,047 (56.81%) alleged retaliation. *See id.*

17.     Despite foreseeability of age discrimination and retaliation, CPL hired managers and human resources personnel who were not qualified to follow laws and policies prohibiting age discrimination and retaliation.

18.     Despite foreseeability of age discrimination and retaliation, CPL did not adequately train its managers to follow laws and policies prohibiting age discrimination and retaliation.

19.     Despite foreseeability of age discrimination and retaliation, CPL failed to supervise its managers to ensure they followed laws and policies prohibiting age discrimination and retaliation.

20.     Although foreseeable, CPL failed to prevent age discrimination and retaliation against Guy.

---

[1] This number does not include charges filed with state or local Fair Employment Practices Agencies.

3

## Guy's Employment with CPL

21.     In February 2004, Guy began working for CPL as an Administrative Assistant.

22.     In July 2013, CPL promoted Guy to Assistant to the Executive Director.

23.     In September 2014, CPL promoted Guy to Chief Operating Officer.

24.     At all relevant times, Guy was qualified for the Chief Operating Officer because:

(a)     Of her work experience with CPL;

(b)     In 2015, she, along with CPL's previous Executive Director and Founder, completed the Dale Carnegie Course: Skills for Success;

(c)     She met or exceeded CPL's reasonable performance expectations for her position—on November 10, 2023, less than one month before Defendants fired her, she received a positive Performance Appraisal.

25.     In or around August 2022, CPL issued a written warning to Guy for allegedly presenting an "unwelcome work environment" after an employee filed a harassment complaint against Guy.

26.     CPL never shared the final written report with Guy and no evidence supporting harassment had been found; however, CPL issued the written warning.

## Guy Engages in Protected Activity

27.     Guy's daughter, Tonya DiPilla (DiPilla), also worked for CPL.

28.     When DiPilla was in high school and college, she worked in the kennel as a kennel assistant.

29.     After graduating from college, from July 2013 until September 2023, DiPilla worked on CPL's development team.

30.     In 2023, DiPilla requested four weeks of a flexible working schedule to work from home while her mother-in-law was undergoing cancer treatment.

31.    CPL denied DiPilla's request and told her that she had to be in the office, while allowing other employees to work flexible schedules.

32.    On at least three occasions, Guy told Cramer that CPL had to be careful because it was discriminatory to not offer DiPilla the same flexibility that CPL offered to other employees.

33.    The last time Guy mentioned CPL's discriminatory treatment of DiPilla to Cramer was in November 2023, less than a month before Defendants fired Guy.

34.    On that occasion, Guy told Cramer that DiPilla could have had a discrimination case against CPL.

## **Defendants Fire Guy**

35.    On November 22, 2023, Cramer told Guy that she needed to meet with her about a complaint that had been filed.

36.    Cramer called Corey Wegerbauer (Wegerbauer), CPL's Business Manager, to join the meeting.

37.    At this time, Guy was Wegerbauer's acting supervisor and Wegerbauer had given notice that he was retiring at the end of December 2023.

38.    Cramer told Guy that an employee filed a harassment complaint against her.

39.    Cramer would not tell Guy who filed the complaint or what the situation or issue the complaint was related to.

40.    Guy was surprised since she could not recall any circumstance that would warrant such a serious complaint, which she told Cramer and Wegerbauer.

41.    Neither Cramer nor Wegerbauer would tell Guy any details about the alleged harassment complaint.

42.    Cramer and Wegerbauer told Guy that CPL hired a HR company (Blackwell HR Solutions) to investigate the harassment complaint.

43.     Cramer and Wegerbauer told Guy that since this was the second complaint that an employee had filed against her (referring to the August 2022 complaint mentioned above), Blackwell HR Solutions advised them to put Guy on immediate mandatory leave.

44.     Cramer asked for Guy's keys and CPL credit card.

45.     Wegerbauer told Guy that should she choose to speak with the investigator assigned to the complaint, she should be able to figure out who filed the complaint and what it was about.

46.     Guy told Cramer and Wegerbauer that she was not sure that she could emotionally go through this type of situation again and not sure that she wanted to.

47.     Cramer handed Guy the name and phone number of the investigator.

48.     Guy went to her office and learned that CPL had disconnected Guy's access to Outlook.

49.     Cramer came to Guy's office and asked if she was going to call the investigator from the office or if she would rather go home to make the call.

50.     After noticing that CPL had removed her email access, Guy suggested to Cramer that when this type of action is done, access to the data drives should have also been removed.

51.     At this point, Guy was crying and could hardly speak. She packed up her personal possessions from the office and turned in her keys and credit card and left the building.

52.     After arriving home, Guy called Cramer and asked if she would still be permitted to talk with the investigator. Guy explained that she needed to know what the complaint was about and that she believed CPL could learn something from this situation. Cramer replied, "Certainly."

53.     On November 22, 2023, Guy received the call from the investigator and responded to all questions asked.

54.     Guy learned from the investigator's questions that it was Kirstin Downie (Downie), CPL's Director of Development and Communications, who filed the complaint against her.

55.    Downie is significantly younger than Guy. Upon information and belief, Downie was around 40 years old.

56.    The investigator asked Guy questions about a set of emails that she shared with Cramer, obtained and passed along to Cramer per her request, relating to DiPilla's request for flexibility with time working from home.

57.    The investigator also asked Guy a few questions surrounding a potential agreement with another non-profit (Pawsible) as well as her relationship with Cramer and DiPilla.

58.    After Guy spoke with the investigator, she could not imagine why Downie would have filed a harassment complaint against her since she never had any personal communications with Downie about DiPilla. Guy had always respected the relationship of supervisor and employee between Downie and DiPilla, only communicating concerns through Cramer.

59.    The investigator told Guy that the investigation results should be available to CPL by November 29, 2023.

60.    After not hearing from anyone by November 29, 2023, Guy called Cramer on December 1, 2023 and learned that the investigator had a personal emergency and that the results should be available the next week.

61.    Guy did not hear anything from CPL until December 8, 2023.

62.    Around 9:30 a.m. on December 8, 2023, Guy received a call from Cramer. Cramer told her that Wegerbauer was also on the call.

63.    Cramer told Guy that after discussions with members of CPL's Board and considering the previous complaint (from August 2022), that it was in CPL's best interest that she be released from employment.

64.     Cramer told Guy to expect a communication from CPL's attorney about a severance agreement and told her that she should not talk with anyone other than CPL's attorney.

65.     Defendants refused to share Blackwell HR Solutions' investigative report with Guy.

66.     Guy did not sign a severance agreement.

67.     At the time of her firing, Guy was 59 years old.

### **Defendants Replace Guy with a Significantly Younger Individual**

68.     Initially, after firing Guy, Wegerbauer assumed Guy's duties until CPL hired a full time replacement.

69.     In 2024, CPL hired Alicia Spoto (Spoto) to replace Guy and re-named the Chief Operating Officer position to "Director of Operations."

70.     Upon information and belief, Spoto is approximately 34 years old.

71.     Since Guy was 59 years old at the time of her firing, Spoto is approximately 26 years younger than Guy.

### **Defendants' Legal Violations**

72.     Defendants discriminated against Guy based on her age.

73.     Defendants retaliated against Guy for engaging in protected activity when she complained about Defendants' disparate treatment of DiPilla based on her association with a person with a disability.

74.     Defendants' actions have caused Guy significant financial loss, as well as emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

### **Count I**
### **Age Discrimination (ADEA and PHRA)**

75.     Paragraphs 1-74 are incorporated by reference as if fully set forth herein.

76.     At the time of her firing, Guy was 59 years old.

77.     As averred above, at all relevant times, Guy was qualified for the Chief Operating Officer position.

78.     Defendants fired Guy and replaced her with a significantly younger individual.

79.     Defendants fired Guy due to age discrimination

80.     Defendants' actions have caused Guy significant financial loss, as well as emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

81.     Defendants' acts, failures to act, practices, and policies set forth above constitute age discrimination and violate the ADEA and PHRA.

82.     Cramer is sued individually under the PHRA (and not under the ADEA) because she aided and abetted CPL's discriminatory conduct against Guy by intending to aid CPL's discriminatory behavior and/or by failing to take action to prevent CPL's discriminatory behavior.

WHEREFORE, Guy respectfully requests this Court:

A.      Issue a Declaratory Judgment declaring that Defendants' actions as set forth in this Complaint are unlawful and violate the ADEA and PHRA.

B.      Issue equitable/injunctive relief including:

(1)     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their officers, agents, employees, and those acting in participation with Defendants, from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of the ADEA and PHRA.

(2)     Order CPL to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under the ADEA and PHRA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

(3)    Order CPL to deliver to its Board members and employees a copy of the jury verdict and trial court judgment.

(4)    Order CPL to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under the ADEA and PHRA—with the reporting specifics to be tailored based on the evidence.

(5)    Order CPL to reinstate Guy upon such terms and conditions as will put her in the position she would have occupied had Defendants not unlawfully discriminated against her.

C.    Enter judgment in favor of Guy and against Defendants for back pay, including wages and fringe benefits.

D.    Enter judgment in favor of Guy for front pay in lieu of reinstatement.

E.    Enter judgment in favor of Guy and against Defendants for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

F.    Enter judgment in favor of Guy and against Defendants for liquidated damages, as allowable by law.

G.    Award Guy reasonable attorney's fees together with the costs of this action.

H.    Award Guy pre-judgment and post-judgment interest.

I.    Enter judgment in favor of Guy for any other monetary losses as a direct result of Defendants' violation of the ADEA and PHRA, including but not limited to negative tax consequence damages.

J.    Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Guy's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

**Count II**
**Retaliation (ADAAA and PHRA)**

83.     Paragraphs 1-82 are incorporated by reference as if fully set forth herein.

84.     As averred above, Guy engaged in protected activity under the ADAAA and the PHRA when she complained about Defendants' disparate treatment of DiPilla based on her association with a person with a disability.

85.     As averred above, after Guy engaged in protected activity, she suffered an adverse action—Defendants fired her.

86.     Defendants retaliated against Guy for engaging in protected activity.

87.     Defendants' actions have caused Guy significant financial loss, as well as emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

88.     Defendants' acts, failures to act, practices, and policies set forth above constitute retaliation and violate the ADAAA and PHRA.

89.     Cramer is sued individually under the PHRA (and not under the ADAAA) because she aided and abetted CPL's retaliatory conduct against Guy by intending to aid CPL's retaliatory behavior and/or by failing to take action to prevent CPL's retaliatory behavior.

WHEREFORE, Guy respectfully requests this Court:

A.     Issue a Declaratory Judgment declaring that Defendants' actions as set forth in this Complaint are unlawful and violate the ADAAA and PHRA.

B.     Issue equitable/injunctive relief including:

(1)     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their officers, agents, employees, and those acting in participation with

Defendants, from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of the ADAAA and PHRA.

(2)    Order CPL to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under the ADAAA and PHRA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

(3)    Order CPL to deliver to its Board members and employees a copy of the jury verdict and trial court judgment.

(4)    Order CPL to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under the ADAAA and PHRA—with the reporting specifics to be tailored based on the evidence.

(5)    Order CPL to reinstate Guy upon such terms and conditions as will put her in the position she would have occupied had Defendants not unlawfully retaliated against her.

C.    Enter judgment in favor of Guy and against Defendants for back pay, including wages and fringe benefits.

D.    Enter judgment in favor of Guy for front pay in lieu of reinstatement.

E.    Enter judgment in favor of Guy and against Defendants for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

F.    Enter judgment in favor of Guy and against Defendants for punitive damages, as allowable by law.

G.    Award Guy reasonable attorney's fees together with the costs of this action.

H.    Award Guy pre-judgment and post-judgment interest.

I.      Enter judgment in favor of Guy for any other monetary losses as a direct result of Defendants' violation of the ADAAA and PHRA, including but not limited to negative tax consequence damages.

J.      Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Guy's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

## **Jury Demand**

Guy demands a jury to try all claims triable by jury.

Respectfully submitted,

Dated: October 13, 2025

Stephanie J. Mensing
PA ID No. 89625
Mensing Law LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com
Attorney for Plaintiff